WILLIAM B. NORRIS, JOHN K. CALDWELL AND JACOB NORRIS *vs.* JOHN CAMPBELL.

*Equity Jurisdiction—Injunction—Weight of Evidence.*

Courts of Equity do not lightly interfere with judgments at law, and only for the prevention of fraud. It is never merely for the correction of informalities or irregularities in legal or judicial proceedings.

In an action at law, two summonses having been returned *non est*, against a defendant who was absent from the State, and the plaintiffs having produced their account with an affidavit of the *bona fide* indebtedness of the defendant, an attachment was issued, and a judgment of condemnation rendered. HELD:

That such voluntary absence was not a sufficient ground for the interposition of a Court of Equity, to restrain the plaintiffs from proceeding to realize their judgment by execution.

That the account, having been made out against the defendant as a surviving partner of J., and sworn to as such, and the plaintiffs in their answer under oath, to the bill of complaint of the defendant seeking to restrain them from realizing their judgment, having stated that they were credibly informed and verily believed that the defendant was a partner of J., at the time the debt was contracted, the said answer being responsive to the bill, is not outweighed by the testimony of the defendant, and his son who swore that he never was the partner of J.

APPEAL from the Circuit Court of Baltimore City.

The appeal in this case was taken from a decree of the Circuit Court of Baltimore City, granting a perpetual injunction, to restrain proceedings at law, upon a *fieri facias* issued out of the Court of Common Pleas of Baltimore City, on a judgment rendered by the said Court on the 14th of January, 1863, in a suit in which the appellants, Wm. B. Norris, John K. Caldwell and Jacob Norris, trading as Norris, Caldwell & Co., were plaintiffs, and the appellee, as surviving partner of Campbell & James, was defendant.

The appellee, in his bill of complaint, which was filed on the 2d of February, 1866, alleged that the judgment against him had been recovered unfairly and improperly,

and was in fact a fraud, that he never was a partner of James; that before the institution of the suit, he had left the State, and did not return until after the rendition of the judgment—that the judgment was rendered on an attachment issued after two summonses had been returned *non est*—that he had no knowledge of the prosecution of said suit, and that if he had known of it, he would have defended it with undoubted success. The answer of the appellants, Wm. B. Norris, John K. Caldwell and Jacob Norris admitted the recovery of the judgment, but affirmed that the same had been obtained fairly and properly and without fraud, and pleaded it in bar of the relief which the appellee sought by his bill—that they had been credibly informed, and believed that the appellee was a partner of James at the time of the contracting of the debt, on which the judgment was recovered; that the question of partnership was not examinable by a Court of Equity, but should have been raised at law before the judgment became final; and that if the appellee never received notice of the suit, such failure was caused by his wilful absence from the State, and not by any negligence on the part of the respondents. Under a commission to take testimony, evidence was adduced on the part of the appellee, to show that he never had been a partner of James and had never received notice of the pendency of said suit. This evidence was excepted to.

The cause was argued before Bowie, C. J., Bartol, Weisel and Crain, J.

*David Fowler*, for the appellants.

The judgment which the Court below (Alexander, J.,) declared to have been obtained by surprise and constructive fraud, was a judgment of condemnation on an attachment, after two summonses had been returned *non est*. The appellants, Wm. B. Norris, John K. Caldwell and

Jacob Norris, who were plaintiffs at law, proceeded under Section 25, Article 10 of the Code of Public General Laws, which provides, that "when two summonses have been returned *non-est*, against a defendant, * * * * the plaintiff, upon proof of his claim as hereinbefore required, shall be entitled to an attachment, * * * * and the same proceedings shall be thereupon had, as in attachments issued against absconding debtors." The evidence offered by the appellants before the commissioner, consisting of the record of the attachment case in the Court of Common Pleas, shows that the judgment was rendered by said Court, in the legitimate exercise of its jurisdiction, and was obtained without fraud.

The only questions which can arise in this case, are the jurisdiction of the Court of Common Pleas, and fraud on the part of the appellants in obtaining the judgment. There can be no doubt with regard to the jurisdiction of the Court. There are, in the appellee's bill, general allegations of fraud, but there is no proof of fraud anywhere in the cause, unless it be contended that the absence of Campbell, and want of actual and personal notice of the suit at law, are facts which establish fraud. It would be remarkable if the facts of absence and want of actual notice, could be used as evidence of fraud—when the law authorizes an attachment like the one in question, to be issued *only* when the defendant is absent and cannot be summoned. Sec. 25, Art. 10, Code of Pub. Gen. Laws. The process of attachment, after two summonses have been returned *non est*, is the only mode which the law of Maryland provides, for cases like the one at bar. The only notice required in this proceeding is the constructive notice given by service of the writ of attachment. *The Methodist P. Church vs. The Mayor and C. C. of Baltimore*, 6 *Gill*, 400. Having, therefore, proceeded in the recovery of the judgment, according to the requirements of the statute, and there being no evidence of fraud, the decree of the Court below must be reversed.

The judgment of condemnation in said attachment proceeding, is a judgment *in rem* and not *in personam.* Personal notice is not requisite to the validity of a judgment *in rem.* *Wright vs. Wright's Lessee,* 2 *Md. Rep.,* 451; *Woodruff vs. Taylor,* 20 *Vermont,* 65. The record and judgment in the attachment case are conclusive of the whole question. The fact of partnership was determined by the Court of Common Pleas upon evidence submitted by the appellants. 2 *Smith's Leading Cases,* 795, 796, and cases there cited. *Vorhees vs. The Bank of the United States,* 10 *Peters,* 449; *Barney vs. Patterson's Lessee,* 6 *H. & J.,* 182; *Crepps vs. Durden,* 1 *Smith's Leading Cases,* 1015, 1016, and cases there cited. *Clark & Jackson vs. Bryan & Lunt,* 16 *Md. Rep.,* 171; *Tomkins vs. Tomkins,* 3 *Stockton, (New Jersey,)* 512; *Beech vs. Abbott,* 6 *Vermont,* 591; *Ridley vs. Ridley,* 24 *Miss.,* 648; *Lessee of Paine vs. Mooreland,* 15 *Ohio,* 435.

*John Carson* and *John B. Wentz, Jr.,* for the appellee, contended:

That the judgment was obtained through mistake or fraud, and ought in equity to be set aside, and referred to the following authorities in support thereof. *Taymon vs. Mitchell,* 1 *Md. Ch. Dec.,* 505, '6; *Fowler vs. Lee,* 10 *Gill & John.,* 362; *Briesch vs. McCauley,* 7 *Gill,* 189; *Marine Ins. Co. vs. Hodgson,* 7 *Cranch,* 336; *Tabler vs. Castle,* 12 *Md. Rep.,* 144; *Windwart vs. Allen,* 13 *Md. Rep.,* 196; *Gardner vs. Jenkins,* 14 *Md. Rep.,* 58.

CRAIN, J., delivered the opinion of this Court.

We think, upon principle, as well as upon the authority of numerous adjudged cases, the injunction was improperly granted in this case, and the decree of the Circuit Court of Baltimore City ought to be reversed. In the bill there is no fact stated to show that fraud was committed in the obtaining the judgment, and there is no

evidence that any was committed. The only ground for the relief asked against the judgment, is the fact averred in the bill, that the appellee had not been in the State of Maryland, with the exception of a few days, from the commencement of the suit up to the time of his filing his bill, and that he had no knowledge of the case. It has been very correctly said that Courts of Chancery do not lightly interfere with judgments at law; they only interfere for the prevention of fraud; never merely for the correction of informalities or irregularities in legal or judicial proceedings. In this case the complainant, in his bill, avers that the property had been attached under judicial process, and been condemned by the judgment of the Court. The appellants, after indulging their debtor for nearly two years, availed themselves of their legal remedy to recover their money. It appears that they did not proceed by attachment against the appellee, as a non-resident or absconding debtor, but pursued the remedy prescribed by the statute, after the return of two summonses of *non est.* The defendant was not prevented by any act of fraud or accident on the part of the appellants, from defending the suit, and his own voluntary absence from the State, is no ground for the interposition of the Chancery tribunal. If this Court were to recognize the absence of the defendant from the State, as a sufficient ground for the interference of a Court of Equity, every judgment obtained by the process of attachment, would be a subject of review in a Court of Equity. If the defendant absented himself, and did not defend the suit, the fault and negligence is with himself, and a Court of Equity will not interfere. But, upon the merits of the case, we think the decree of the Circuit Court should be reversed. The account on which the attachment issued is made out against John Campbell, surviving partner of W. J. James, with an affidavit attached of John K. Caldwell, one of the firm and one of the appellants, and all

the members of the firm of Norris, Caldwell & Co., in their answer under oath, say that they are credibly informed, and verily believe, that the appellee was a partner of W. J. James at the time when the debt was contracted. Their answer is responsive to the allegations of the bill, and in our opinion is not outweighed by the testimony of the appellee and his son. After obtaining the judgment, the appellants did not exhibit any anxiety or haste to make the money, to the prejudice and injury of the appellee. The judgment was obtained on the 14th of January, 1863, and they did not issue an execution on it, until 1866. So that the appellants, by their forbearance and indulgence, afforded the most ample time to the appellee to have the judgment reviewed in this Court, if any irregularities or errors were committed in the obtaining of it. We will sign a decree reversing the order and decree of the Circuit Court, with costs to the appellants in both Courts, and dismiss the bill.

*Order and decree reversed*
*and bill dismissed.*

(Decided 12th November, 1867.)