*Simmons, et al. v. The Maryland Management Company, et. al.*, No. 1680, September Term, 2019. Opinion by Eyler, Deborah S., J.

**MARYLAND CONSUMER DEBT COLLECTION ACT (MCDCA) § 14-202(8) DEBT COLLECTION BY ENFORCING RIGHT WITH KNOWLEDGE RIGHT DOES NOT EXIST - - MARYLAND CONSUMER PROTECTION ACT (MCPA) §§ 13-301(14)(iii) and 13-303(5) MISREPRESENTATION IN DEBT COLLECTION - - REAL PROPERTY § 8-208(d) PROHIBITION AGAINST ANTI-WAIVER PROVISIONS IN RESIDENTIAL LEASES - - COURTS AND JUDICIAL PROCEEDINGS ARTICLE § 5-1202(a) PROHIBITION AGAINST FILING DEBT COLLECTION ACTION BEYOND STATUTE OF LIMITATIONS - - *TIPTON V. PARTNERS MANAGEMENT CO.*, 364 Md. 419 (2001) - - *SMITH V. WAKEFIELD, LP*, 462 Md. 713 (2019) - - *CHAVIS V. BLIBAUM*, ___Md.___(August 27, 2021).**

Former Tenants of residential properties in Maryland brought putative class action against former Landlords whose leases contained clause purporting to extend the statute of limitations for actions arising out of them from 3 to 12 years and against Lawyers who on behalf of Landlords brought back-rent collection actions against Tenants in the District Court of Maryland. Tenants sued for damages for violations of the MCDCA provision barring debt collectors from enforcing or attempting to enforce a right with knowledge it does not exist; for violations of the MCPA, including the prohibition against making false representations in collecting consumer debt; and for violations of provision of Real Property Article prohibiting landlords from including a waiver of rights in a residential lease. In addition, Tenants sought declaratory and injunctive relief based on violation of a statute prohibiting filing an action to recover time-barred consumer debt. Circuit court granted motion to dismiss for failure to state a claim for which relief could be granted.

*Held*: Judgment vacated.

In *Tipton*, the Court of Appeals held that the statute of limitations for back-rent actions against residential tenants is three years and a lease with "(Seal)" next to the signature line is not a specialty to which a 12-year limitations period applies. It further stated it was "holding" that a provision so extending the limitations period could be included in the body of the lease. In *Smith*, in which such a provision was included in the lease, the Court held that the latter "holding" in *Tipton* was "dicta," that a provision extending limitations to 12 years in a residential lease violates the anti-waiver provision of RP section 8-208(d), and that it is otherwise unreasonable and unenforceable.

The District Court back-rent actions against Tenants were brought after *Tipton* was decided and before *Smith* was decided, and more than three years after leases were breached. Tenants alleged that Landlords and Lawyers violated the MCDCA by filing suits with knowledge that the right they were seeking to enforce did not exist, i.e., that debts were time-barred and no longer collectible. Landlords and Lawyers maintained that *Smith*

only applied prospectively, that under *Tipton* limitations-extending clauses were acceptable in residential leases, and that given that state of the law, they could not have acted with knowledge that they were enforcing a right they did not have by filing suits for back-rent more than 3 years after breaches. Under *Chavis*, however, when an area of law is unsettled, a person who makes a mistake of law by seeking to enforce a right later shown not to exist is not shielded from liability under the MCDCA but may be liable if found to have acted recklessly. *Tipton* did not settle the question whether a limitations-extending clause in a residential lease is legal and enforceable; the question was not settled until *Smith* was decided. Therefore, whether the Landlords and Lawyers violated the MCDCA depends upon whether they acted recklessly, which is a question of fact not properly resolved on a motion to dismiss.

Tenants' MCPA claim that suits filed against them contained false representations was dismissed on the ground that the representations were not made to the consumers, i.e., the Tenants, but to the courts in which they were filed, under holding in *Sayyed v. Wolpoff & Abramson*, 733 F. Supp. 2d 635 (D. Md. 2010). This case differs from *Sayyed*, which concerned a request for attorneys' fees made in concert with motion for summary judgment sent to counsel and to court and not to consumers. Here, complaints were served on Tenants and therefore the alleged misrepresentations were made to them as consumers. MCPA claim should not have been dismissed.

*Tipton* did not address the question whether the anti-waiver provision in RP section 8-208(d) applies to clause extending limitations period in residential lease. *Smith* held that it does. That decision applied retroactively, as it did not change an established principle of law. Tenants stated a claim based on violation of that statute.

Tenants sought declaratory and injunctive relief, including orders precluding Landlords and Lawyers from enforcing judgments obtained against Tenants in District Court back-rent actions. Landlords and Lawyers maintained that because the suits were filed in violation of CJP section 5-1202(a), which prohibits filing consumer debt collection actions after limitations has expired, the District Court lacked jurisdiction over those cases and the judgments entered were void. Judgments were not void because the District Court had fundamental jurisdiction over the actions. Under reasoning in *LVNV v. Finch*, 463 Md. 586 (2019), declaratory and injunctive relief, including prohibition against enforcing judgments and disgorgement of funds received, could be pursued in conjunction with claim under MCDCA.

Circuit Court for Baltimore City
Case No. 24-C-19-001317

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1680

September Term, 2019
_____


BRITTANY SIMMONS, ET AL.

v.

THE MARYLAND MANAGEMENT
COMPANY, ET AL.

_____

Graeff,
Berger,
Eyler, Deborah S.
  (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Eyler, Deborah S., J.
_____

Filed: February 4, 2022

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

*Kehoe, Christopher B., J., did not participate in
the Court's decision to designate this opinion for
publication pursuant to Md. Rule 8-605.1.

In this appeal, the appellants ("Tenants"[1]) are six people who at one time rented Maryland residential properties either owned or managed by certain of the appellees ("Landlords"[2]). The other appellees are lawyers, law firms, and the collection agency employer of one of the lawyers ("Lawyers"[3]), who sued each Tenant for back rent in the District Court of Maryland. Those lawsuits, filed in several Maryland counties, all were brought more than three years after the Tenants breached their leases. Although the limitations period for an action for back rent on a residential lease is three years, the leases governing the tenancies included a clause entitled "Statute of Limitations" that purported to apply a twelve-year limitations period to causes of action arising from them ("Statute of Limitations Clauses").

In the Circuit Court for Baltimore City, the Tenants filed a putative class action against the Landlords and the Lawyers. Various combinations of Tenants alleged that the Statute of Limitations Clauses were invalid and unenforceable and that the actions for back rent were time-barred. They further alleged that by including the Statute of Limitations Clauses in the leases and acting to enforce them, the Landlords violated Maryland Code

[1] The "Tenants" are Brittany Simmons, Cory Scoville, Gregory Smith, Marie Brown, Lorraine Haut, and Amanda Kelly.

[2] The "Landlords" are Maryland Management Company ("MMC"), a property management company that owned, in whole or in part, all the residential properties leased to the Tenants; Woodbrook Limited Partnership ("Woodbrook"); Disney Road Limited Partnership, LLLP ("Disney"); and Wakefield, LLLP ("Wakefield").

[3] The "Lawyers" are Stuart L. Sagal, Esq. and Sagal, Filbert, Quasney & Betten, P.A. ("the Sagal Defendants"), and Robert L. Sova, Esq. and Beacon Services, LLC, a collection agency that employed Mr. Sova ("the Beacon Defendants").

(1974, 2015 Repl. Vol., 2021 Supp.) § 8-208 of the Real Property Article ("RP"); and that by filing actions to recover time-barred debt and attempting to enforce or actually enforcing judgments they obtained, the Landlords and the Lawyers violated Maryland Code (1973, 2020 Repl. Vol.), § 5-1202(a) of the Courts and Judicial Proceedings Article ("CJP") and Maryland Code (1975, 2013 Repl. Vol., 2015 Supp.), § 14-202(8) of the Commercial Law Article ("CL"), the latter being a part of the Maryland Consumer Debt Collection Act ("MCDCA").[4]  On the same basis, the Tenants alleged that the Landlords violated CL §§ 13-301(14)(iii) and 13-303(5), parts of the Maryland Consumer Protection Act ("MCPA").[5]  The Tenants sought damages for the statutory violations.  In addition, various combinations of Tenants sought declaratory and injunctive relief.  Finally, the Tenants sought attorneys' fees.

The circuit court granted motions to dismiss all claims for failure to state a claim for which relief can be granted.  This appeal followed. We shall vacate the judgments and remand for further proceedings not inconsistent with this opinion.

## LEGAL BACKGROUND

To place the claims, the circuit court's rulings, and the parties' contentions in context, we first shall describe the legal backdrop against which this case has played out.

---

[4] The MCDCA is codified at CL §§ 14-201 – 14-204.

[5] The MCPA is codified at CL §§ 13-101 – 13-501.

2

## Statutes

"The MCDCA regulates the conduct of anyone who collects – or attempts to collect – a debt arising from a consumer transaction." *Nationstar Mortgage, LLC v. Kemp*, 476 Md. 149, 161 (2021). Under CL § 14-202(8), in "collecting or attempting to collect an alleged debt[,]" debt collectors "may not . . . [c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." The "with knowledge" element of this subsection of the MCDCA "require[s] proof that a debt collector claimed, attempted, or threatened to enforce the non-existent right 'with actual knowledge or with reckless disregard as to the falsity of the existence of the right.'" *Chavis v. Blibaum & Assocs., P.A.*, ___Md. ___, No. 30, Sept. Term 2020, slip op. at *27 (filed August 27, 2021) (quoting *Fontell v. Hassett*, 870 F. Supp. 2d 395, 407 (D. Md. 2012) (internal quotation marks and citations in *Fontell* omitted)). Under CL § 14-203, "[a] collector who violates any provision of [the MCDCA] is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury."

Two provisions of the MCPA also apply to consumer debt collection practices. CL § 13-303(5) prohibits a person from "engag[ing] in any unfair, abusive, or deceptive trade practice . . . in . . . [t]he collection of consumer debts[.]" CL § 13-301(14)(iii) includes in "[u]nfair, abusive, or deceptive trade practices" any "[v]iolation of [the MCDCA]." Thus, a trade practice may violate the MCDCA and be a *per se* violation of the MCPA, or it may violate the MCPA independently.

3

Several statutes governing time periods for filing suit are relevant. Generally, civil actions are governed by a three-year statute of limitations. CJP § 5-101. The limitations period for actions that are "specialties" is twelve years, CJP § 5-102, and a "[c]ontract under seal" is a specialty. CJP § 5-102(a)(5). CJP § 5-1202, entitled "Statute of limitations applicable to consumer debt collection action[,]" states at subsection (a):

> A creditor or a collector may not initiate a consumer debt collection action after the expiration of the statute of limitations applicable to the consumer debt collection action.

CJP § 5-1202 became effective on October 1, 2016.

Finally, RP § 8-208(d)(2), pertaining to residential leases, is what commonly is referred to as an "anti-waiver" provision. It prohibits a landlord from using "a lease or form of lease containing any provision that . . . has the tenant agree to waive or to forego any right or remedy provided by applicable law[.]" Under subsection (g)(1) and (2) of the statute, a landlord may not enforce such a lease provision; and, if a landlord includes such a provision in a residential lease and tenders the lease to the tenant, or if a landlord attempts to enforce the provision or makes known an intent to enforce it, the tenant may recover actual damages caused thereby, including reasonable attorneys' fees.

### Court of Appeals Cases on the Limitations Period for Back-Rent Actions on Residential Leases

In *Tipton v. Partner's Management Co.,* 364 Md. 419 (2001), Tipton's landlord sued him for back rent seven years after he breached the lease. Tipton raised the three-year statute of limitations in CJP § 5-101 as a defense. The landlord countered that because the word "(SEAL)" appeared next to the signature line, the lease was a "contract under seal,"

to which the twelve-year limitations period in CJP § 5-102(a)(5) applied. The District Court agreed with the landlord and entered judgment against Tipton.

Eventually, the case reached the Court of Appeals, which reversed. It explained that for centuries all leases executed in Maryland were required to be made under seal, "primarily to create presumptions of consideration and validity." 364 Md. at 431. During that same time, however, Maryland law had established that the limitations period for actions for back rent is three years. Article 57, § 1 of the Maryland Code (1957, 1972 Repl. Vol.), the immediate predecessor to CJP § 5-101, specified all forms of action subject to the three-year limitations period, including an action "'brought to recover rent in arrear, reserved under any form of lease[.]'" *Id.* at 437 (emphasis omitted). And the Court of Appeals had construed Article 57, § 3, the immediate predecessor to CJP § 5-102, which, as noted, sets forth the twelve-year limitations period for specialties, as *not* applying to leases. *Id.* at 438 (citing *Henry's Drive-In, Inc. v. Pappas*, 264 Md. 422, 430 (1972)).

The Court further explained that, upon codification of the Courts and Judicial Proceedings Article in 1973, CJP § 5-101 took its current form as "'a blanket three-year limitation covering all civil causes of action for which no other limitation is specifically provided.'" *Id.* at 440 (quoting Report by the Governor's Commission to Revise the Annotated Code of Maryland). By creating CJP § 5-101, the General Assembly clearly intended "to cover the causes of action that it had been the intent of the legislature to cover with Article 57 section 1, just in a more simplistic form." *Id.* at 441-42. The following year, the requirement that all leases be made under seal was eliminated in the codification of the Real Property Article. The practice of putting the word "Seal" next to the signature

5

lines on residential leases remained widespread as a vestige of prior times, however. *Id*. at 433.

The *Tipton* Court reasoned that because Maryland law before codification of the Courts and Judicial Proceedings Article applied a three-year limitations period to an action for back rent "under any form of lease" and the General Assembly did not express an intent to change that in creating CJP § 5-101, the three-year limitations period applies to actions for back rent, even for leases made under seal. Accordingly, Tipton's lease was not a specialty, even though "(SEAL)" appeared at the end of the signature line. Moreover, "[t]here was no language in the lease in respect to statutes of limitation[,]" much less any evidence that "the parties specifically agreed to a twelve-year period of limitations[.]" *Id*. at 423-24. The parties in *Tipton* raised the question whether applying the statute of limitations for a specialty to a residential lease would contravene the anti-waiver provision in RP § 8-208(d)(2), but the Court did not address it.

The *Tipton* Court set forth its "holding" three times. At the beginning of its opinion, the Court said: "We hold that a residential lease agreement, even if the lease agreement has the word seal affixed, is subject to the three-year limitation period enunciated in [CJP § 5-101]." *Id*. at 422. To that it added a footnote: "Any statute of limitations can be waived by agreement of the parties. Generally, the affixation of a seal, alone, will not constitute such a waiver." *Id*. at n.3. At the outset of its "Discussion" section, the Court reiterated: "We hold that actions for rent arrears under any kind of residential lease must be filed in compliance with [CJP] section 5-101." *Id*. at 425. In a footnote to that sentence, the Court

6

cross-referenced its earlier footnote about waiver of the statute of limitations by agreement.[6]

Finally, in the last paragraph of the opinion, the *Tipton* Court stated:

> We hold that claims for arrearages of rent under a residential lease, even a lease to which a seal is affixed, must be filed within the three-year limitation period **unless the parties to the lease agree, in the body of the lease, that the lease is subject to the twelve-year limitation period of section 5-102**.

*Id*. at 445 (emphasis added).

Eighteen years later, the Court of Appeals decided *Smith v. Wakefield,* 462 Md. 713 (2019). Like Tipton, Smith had been party to a residential lease and was sued for back rent seven years after he breached the lease.[7] Smith's lease, unlike Tipton's, included a Statute of Limitations Clause:

> **STATUTE OF LIMITATIONS**: This lease is under seal and is subject to the twelve-year limitation period of Section 5-102 of the Courts and Judicial Proceedings Article of the Annotated Code of Maryland.

*Id*. at 722. Smith took the position that the clause was not effective and therefore the back-rent action was barred by the three-year limitations period in CJP § 5-101. The landlord took the position that the action was not time-barred as it was governed by the twelve-year limitations period designated in the Statute of Limitations Clause. The District Court

---

[6] The hard copy of the *Tipton* opinion in the bound Maryland Reports cross-references footnote 3, but the electronic versions mistakenly cross-reference footnote 2, which pertains to the version of the Courts and Judicial Proceedings Article referenced throughout the opinion. As the Court of Appeals later noted in *Smith v. Wakefield,* 462 Md. 713, 719 n.2 (2019), the cross-reference in the electronic versions of the *Tipton* opinion is a typographical error.

[7] Smith is one of the Tenants in this case.

7

agreed with the landlord and entered judgment in its favor. The circuit court affirmed in a *de novo* appeal.

The Court of Appeals granted Smith's petition for writ of *certiorari* on July 12, 2018.[8] In a 5-2 decision filed on February 27, 2019, the Court reversed. Just as it had in *Tipton*, it made clear that Maryland actions for back rent on residential leases always have been subject to a three-year limitations period. The Court explained that it had decided in *Tipton* that a residential lease could not be converted into a contract under seal by including the word "(Seal)" at the end of the signature line. It had *not* decided whether a residential lease can be converted into a specialty by including language to that effect in its body; and "whether application of the 12-year period of limitations would conflict with provisions of the State landlord-tenant law[,]" specifically, RP § 8-208(d)(2). *Id.* at 718.

The *Smith* Court reviewed what it had called "holdings" in *Tipton* and explained as follows. The "first two iterations . . . simply state that actions for back rent are subject to the three-year period of limitations in CJ § 5-101, that limitations periods may be waived, and that a seal does not suffice to effect such a waiver." *Id*. at 720. The third iteration restated that holding and added a phrase, prefaced by the word "unless," addressing a

---

[8] The issues on which the writ of *certiorari* was granted were:

1) Can a single sentence in a form residential lease grant a landlord an extra 9 years to bring a claim against a tenant? 2) Does Md. Code Ann. Real Prop. ("RP") § 8-208(d)(2) prohibit the extension of the statute of limitations to 12 years in a residential lease? 3) Even if RP § 8-208 does permit an extension of the statute of limitations, must the extension be reasonable? 4) If a reasonable extension is permitted, is it reasonable to extend the statute of limitations in a month-to month residential lease from 3 years to 12 years?

8

question not directly before the Court in *Tipton*: "whether a lease could be converted into a contract under seal and thus be made subject to the 12-year period of limitations in CJ § 5-102." *Id*. Thus, rather than being part of its holding in *Tipton*, the "unless" phrase

> seemed to predict the Court's opinion about a hypothetical lease that might appear in a future case – the kind of prediction that is often referred to as dicta, as it was unnecessary to the decision in *Tipton*.

*Id*. at 720. The leases in the case before it were like the lease the Court hypothesized about in *Tipton*.

The *Smith* Court reemphasized that even though for centuries residential leases were required to be made under seal, actions for back rent always have been subject to a three-year limitations period, and "there is no legislative history suggesting that the Legislature had intended to change that longstanding period of limitations." *Id*. at 732. *Tipton* did not hold to the contrary, the Court said, and its analysis "all but closed the door to the possibility that residential leases could ever become a specialty without further legislative action." *Id*. Thus, the Court concluded, the Statute of Limitations Clause in Smith's lease did *not* convert the lease into a specialty. Rather, "actions for back rent under residential leases are subject to a three-year period of limitations . . . regardless of whether the lease includes provisions that purport to convert it into a contract under seal." *Id*. at 716.

The Court next addressed a separate question: was the Statute of Limitations Clause an enforceable agreement between the parties to alter the three-year limitations period on actions for back rent? In answering that question, the Court took guidance from *Ceccone v. Carroll Home Servs., LLC*, 454 Md. 680 (2017), in which it had declared invalid a clause in a service contract for a residential heating system that purported to reduce the limitations

9

period for a civil action by the consumer against the contractor. The *Ceccone* Court held that a "contractually-shortened limitations period[]" for a consumer debt collection action is "valid only if (1) there is no statute to the contrary; (2) the provision is not the result of fraud, duress, misrepresentation, or the like; and (3) the provision is reasonable in light of all pertinent circumstances." *Id*. at 684.

The *Smith* Court applied those factors to determine whether the Statute of Limitations Clause was a valid agreement between landlord and tenant to increase the limitations period for actions on the lease from three to twelve years. On the first *Ceccone* factor, Smith argued that the clause was contrary to the anti-waiver provision in RP § 8-208(d)(2), which, as noted, prohibits a landlord from including a term in a residential lease by which a tenant "agree[s] to waive or to forego any right or remedy provided by applicable law[.]" The Court observed that although the general three-year statute of limitations for actions for back rent "does not appear to fit the ordinary definition of 'remedy[,]'" it "may be considered a 'right,'… in the sense that it confers on a potential defendant the right to be free of litigation based on the particular cause of action." *Smith*, 462 Md. at 735.

The Court went on to explain that even if the agreement to extend the statute of limitations was not precluded by RP § 8-208(d)(2), it was unreasonable under the circumstances. *Id*. In other words, if the clause satisfied the first factor in *Ceccone*, it still would fail because it did not satisfy the third factor in *Ceccone*. The criteria for assessing reasonableness, as discussed in *Ceccone*, include "the length of the modified period of limitations, its relation to the statutory period, the relative bargaining power of the parties,

10

the subject matter of the contract, and whether the modification is one-sided in effect, among other things." *Id.* (citing *Ceccone*, 454 Md. at 697-98). As to those criteria, the *Smith* Court reasoned: (1) the clause quadrupled the limitations period, making it unlikely that Smith still would have the records necessary to defend against the claim; (2) ordinarily a landlord in a residential tenancy has greater bargaining power than the tenant, and, in that case, the language altering the limitations period was in a pre-printed addendum that did not include an opt-out provision; (3) the altered limitations period facially applied to both parties to the lease but in effect offered a benefit to the landlord without a similar benefit to the tenant;[9] and (4) the subject matter of the contract did not create a need for an extended limitations period given that the basis for an action would be known immediately and damages would be capable of certain determination.

At the conclusion of the majority opinion, the Court summarized its holdings as follows:

> [W]e hold: (1) The three-year period of limitations set forth in CJ § 5-101 governs actions for back rent under residential leases, regardless of whether the lease includes provisions that purport to convert it into a contract under seal. (2) The three-year period of limitations that applies to a back rent action under a residential lease is not subject to waiver, in light of RP § 8-208(d)(2).

*Id.* at 736-37.[10]

---

[9] The Court noted that it was unlikely that a tenant would be bringing a cause of action against a former landlord 12 years after the lease was terminated. Thus, although facially even-handed, in practicality the clause increasing the limitations period would be used by landlords and not tenants. 462 Md. at 736.

[10] Although the Court had said that the three-year statute of limitations in CJP § 5-101 "may be considered a right" under RP § 8-208(d)(2), and even if it were not, the Statute of Limitations Clause failed under the third *Ceccone* factor, the Court made clear in its

(continued…)

11

Judge Getty, now Chief Judge, joined by Judge Adkins, dissented. He opined that the Statute of Limitations Clause indeed made the lease a contract under seal and, therefore, a specialty subject to the twelve-year statute of limitations in CJP § 5-102, and that *Tipton* had held as much in the third iteration of its holding. The Majority opinion, he wrote, was a judicial revision of that statute to insert an exception the General Assembly had not included. Moreover, it was "undisputable" that in *Tipton* the Court "clearly set forth guidance . . . for those that wished to establish a residential lease under seal" and now "the Majority concludes that any reliance upon this language is ultimately unjustified." *Id*. at 740.

After the *Smith* opinion was filed, the landlord moved for reconsideration. Among other things, its counsel argued that the opinion made new law and the Court should clarify that even though it had determined that the "penultimate sentence in *Tipton* is *dicta*," reliance upon that language by landlords and their agents had been justified and should not form the basis for future liability. The Court denied the motion without comment. The mandate issued on April 18, 2019.

**Recent Cases Interpreting CL § 14-201(b) (MCDCA Claim)**

On August 27, 2021, while this appeal was pending, the Court of Appeals issued opinions in *Chavis v. Blibaum & Assoc*., *supra*, and *Nationstar Mortgage, LLC v. Kemp*, *supra*, both of which concern the "with knowledge" element of a claim under CL § 14-

conclusion that it was holding that the Statute of Limitations Clause violated RP § 8-208(d)(2).

12

201(b). In addition, on November 24, 2021, this Court issued its opinion in *Newsom v. Brock & Scott, PLLC, et al.*, __ Md. App. __, No. 532, Sept. Term 2019 (filed Nov. 24, 2021), on the same topic. We shall address these cases in our discussion of the issues.

## THE CASE AT BAR

Five days after the Court of Appeals filed its opinion in *Smith*, Tenants Simmons and Scoville brought the instant putative class action suit. The operative complaint is the Third Amended Complaint, which added four more Tenants as plaintiffs. Each Tenant had entered into a standard form residential lease with one of the Landlords sometime after the Court of Appeals decided *Tipton* but before it decided *Smith*. Each lease contained the same Statute of Limitations Clause as in *Smith*, stating that the lease is a contract under seal and is subject to a twelve-year limitations period.

Each Tenant had been sued in the District Court by a Landlord, represented by one of the Lawyers, for breach of lease by non-payment of rent, and in each such case, back rent was sought. In some cases, other losses, fees, and costs also were sought. All the cases were filed more than three years after the Tenants breached their leases but before *Smith* was decided by the Court of Appeals. Except for the suit against Smith, which was filed in 2015, all the suits were filed after the October 1, 2016 effective date of CJP § 5-1202(a), and after the *Ceccone* opinion was filed on July 28, 2017.

Judgments for back rent were entered against Tenants Smith, Simmons, and Kelly in the District Court cases against them. As recounted above, Smith prevailed on appeal and the judgment against him was reversed. Simmons appealed the judgment against her to the circuit court. Initially her case was stayed pending a decision by the Court of Appeals

13

in *Smith*. Subsequently it was stayed pending our decision in the case at bar. Kelly did not appeal the judgment against her, but when her Landlord filed interrogatories-in-aid-of-enforcement, she sought and received a stay pending our decision in this case.

The other cases did not result in judgments for back rent. The District Court case against Cory Scoville was stayed before judgment, pending our decision in this case.[11] Marie Brown's motion to dismiss the case against her on limitations was granted and the Landlord did not appeal. Finally, the back-rent action against Lorraine Haut, f/k/a Lorraine Albert, was voluntarily dismissed with prejudice by the Landlord after the Court of Appeals filed its opinion in *Smith*.

In the Third Amended Complaint, the Tenants alleged, in essence, that the holdings in *Smith* reflected the state of the law when *Tipton* was decided and afterward. They asserted that back-rent actions on residential leases are and always have been subject to a three-year limitations period that cannot be increased to twelve years by language purporting to make the lease a contract under seal. Nor can the three-year limitations period be increased to twelve years by an agreement within the lease, as that runs counter to the anti-waiver provision of RP § 8-208(a)(2). What is more, they alleged, by 2016, the General Assembly had enacted CJP § 5-1202(a), prohibiting consumer debt collectors from initiating actions to recover time-barred debt.

---

[11] At first, the case was stayed pending the Court of Appeals decision in *Smith*. It then was dismissed on January 6, 2021, for lack of jurisdiction pursuant to Rule 3-507. On January 26, 2021, the dismissal order was vacated, and the case was reinstated and again stayed.

14

The Third Amended Complaint included allegations seeking class action status for the plaintiffs and identifying various subclasses. The "Lease Subclass," to which all Tenants belong, consists of those individuals who entered into a lease with a Statute of Limitations Clause purporting to make the lease a specialty to which a twelve-year limitations period applied. The "Tenant Subclass," which includes all the Tenants except Smith, consists of those individuals against whom a debt collection effort was directed, or a suit was filed after October 1, 2016. The "Judgment Subclass," comprised of Tenants Simmons, Smith, and Kelly, consists of those individuals against whom a judgment was entered on a suit filed for back rent. Finally, the "Payment Subclass," also consisting of Tenants Simmons, Smith, and Kelly, is comprised of those individuals who paid money or incurred an obligation to pay money, including attorneys' fees, due to the suits having been filed against them.[12]

In Count 1, Tenants Simmons, Scoville, Brown, Haut, and Kelly, on behalf of the Tenant Subclass, sought a declaration that the District Court suits against them were "beyond the jurisdiction of the courts in which they were filed" because they were "debt collection actions" initiated contrary to CJP § 5-1202(a). They sought disgorgement of monies collected and "appropriate" injunctive relief. In Count 2, Tenants Simmons and Kelly, on behalf of the Judgment Subclass, sought a declaration that the judgments against them were void and unenforceable, based on CJP § 5-1202(a), and sought disgorgement,

---

[12] The Tenants also sought certification of a defendant class. Because the circuit court dismissed all counts, it did not rule on the request for class certification as to plaintiffs or defendants.

an order enjoining enforcement of the judgments, and "appropriate" injunctive relief. In Count 3, all the Tenants, on behalf of the Lease Subclass, sought a declaration that the Statute of Limitations Clauses in their leases were contrary to Maryland law and unenforceable and sought injunctive remedies including requirements that other tenants who entered into leases with Statute of Limitations Clauses be informed that they are invalid. They also sought disgorgement and attorneys' fees and costs.

In the next three counts of the Third Amended Complaint, the Tenants sought damages for statutory violations. In Count 4, brought under the MCDCA by all the Tenants on behalf of the Tenant, Judgment, and Payment Subclasses, the Tenants, quoting *Spencer v. Henderson-Webb, Inc*., 81 F. Supp. 2d 582, 594-95 (D. Md. 1999), alleged that the Landlords and Lawyers had filed the District Court actions against them with "actual knowledge or reckless disregard" of the existence of their right to do so, given that it was established that the three-year limitations period to file suit to collect on debts had expired. In Count 5, Tenants Simmons, Smith, and Scoville, on behalf of the Tenant, Judgment, and Payment Subclasses, alleged as to the Landlords that these MCDCA violations were *per se* violations of the MCPA, and that by filing the District Court suits the Landlords made false representations that constituted violations of the MCPA as well. In Count 6, Tenants Simmons, Smith, and Kelly, on behalf of the Payment Subclass, alleged that by including the Statute of Limitations Clauses in the leases and attempting to enforce them, the Landlords violated RP §§ 8-208(d)(2) and (g)(1)-(2), and caused actual damages. Finally, in Count 7, all the Tenants sought attorneys' fees, citing Rule 2-703(b). The Tenants demanded a jury trial.

16

Three separate motions to dismiss were filed: one by the Sagal Defendants, one by the Beacon Services Defendants, and one by the Landlords. All agreed that, ordinarily, the statute of limitations for an action for back rent on a residential lease is three years. All took the position, however, that when the leases were drafted, when the suits were filed, and when judgments were obtained and pursued for enforcement, the law was settled, under *Tipton*, that a residential lease could include a clause making it a specialty governed by a twelve-year limitations period. Until *Smith* was decided, they maintained, such a clause did not violate RP § 8-208(d)(2), and therefore the limitations period for actions for back rent under the leases was twelve years. Because the back-rent debts were not time-barred, the Landlords and Lawyers could not have violated the MCDCA, as they did not claim, attempt, or seek to enforce a right they knew not to exist; nor could they have violated CJP § 5-1202(a), as the suits were filed within the applicable limitations periods. For the same reasons, the Landlords did not violate the MCPA. The claims for declaratory and injunctive relief failed for those reasons as well (and others).

In response, the Tenants maintained that *Smith* applied retroactively to their cases, as it did not announce a change in the Court's interpretation of statutory or common law, and therefore at all relevant times a clause purporting to convert a residential lease into a specialty subject to a twelve-year limitations period was invalid and unenforceable; the Landlords and Lawyers were knowingly filing claims for time-barred debt, in violation of the MCDCA; the Landlords thereby violated the MCPA and also violated the MCPA

17

independently because their pursuit of judgments constituted deceptive trade practices[13]; the clauses in the leases violated the anti-waiver provision of RP § 8-208(a)(2); and the suits were filed contrary to CJP § 5-1202(a).

The circuit court heard argument on the motions and thereafter issued a 43-page memorandum opinion granting the motions on all counts, for a variety of reasons. The Tenants noted a timely appeal, presenting four questions for review,[14] which we have condensed, rephrased, and reordered:

> I. Did the circuit court err by dismissing the statutory claims on the ground that the actions taken by some or all of the Landlords and Lawyers in entering into leases with the Tenants and to collect back rent against them could not subject them to liability for violations of the MCDCA, the MCPA, or RP § 8-208(d)?
>
> II. Did the circuit court err by dismissing the claims for declaratory and injunctive relief on the ground that the Tenants were not entitled to such relief as a matter of law?
>
> III. Did the circuit court err by dismissing the claim for attorneys' fees?

---

[13] The Lawyers were included as defendants in the MCPA claims.

[14] As posed by Tenants, the questions are:

1. Did the Court of Appeals decision in *Smith v. Wakefield, LP*, 462 Md. 713 (2019) only apply prospectively?

2. Are misleading, deceptive, unfair, or abusive statements prohibited by the MCPA actionable if made in the course of debt collection litigation?

3. Does Maryland law permit collectors and their attorneys to assert the defense of legal error in claims arising under [CL] § 14-202(8)?

4. May a Circuit Court enjoin enforcement of a judgment entered in a Consumer Debt Collection Action filed in violation of [CJP] § 5-1202?

18

## STANDARD OF REVIEW

We review the grant of a motion to dismiss *de novo*. *Reichs Ford Rd. Joint Venture v. State Rds. Comm'n*, 388 Md. 500, 509 (2005). In so doing, "'we must assume the truth of the well-pleaded factual allegations of the complaint, including the reasonable inferences that may be drawn from those allegations.'" *Gasper v. Ruffin Hotel Corp. of Md.*, 183 Md. App. 211, 226 (2008) (citation omitted). We likewise review a circuit court's "interpretation and application of Maryland statutory and case law" for legal correctness. *Breslin v. Powell*, 421 Md. 266, 277 (2011) (quotation marks and citation omitted).

## DISCUSSION

Because it makes sense to do so, we shall review the dismissal of the statutory claims before reviewing the dismissal of the claims seeking declaratory and injunctive relief.

## I.

### STATUTORY CLAIMS

Counts 4, 5, and 6 of the Third Amended Complaint set forth claims for violations of the MCDCA (CL § 14-202(8)), the MCPA (CL §§ 13-301(14)(iii) and 13-303(5)), and the anti-waiver provision in RP § 8-208(d)(2), respectively. As argued below and on appeal, these claims rested either fully or in part on the premise that the various holdings of the Court of Appeals in *Smith v. Wakefield* applied retroactively to events occurring before that opinion was filed. Rejecting that premise, as some or all of the defendants below had asked it to do, the circuit court ruled that *Smith* effected a change in the law from what the Court of Appeals had announced in *Tipton*, and therefore the holdings in *Smith* only applied prospectively and not to the events in these cases.

19

In essence, the circuit court determined that until *Smith* was decided, Maryland law had not established that a residential lease provision purporting to make the lease a contract under seal is invalid and unenforceable; nor had Maryland law established that a residential lease provision purporting to increase the statute of limitations from three to twelve years is invalid and unenforceable as contrary to the anti-waiver provision of RP § 8-208, and is unreasonable. On the contrary, the court ruled, the *Tipton* Court had communicated by language characterized as a "holding" that the parties to a residential lease could agree, in the body of the lease, to make the lease a specialty, increasing the applicable statute of limitations for claims arising out of the lease to twelve years. The Landlords and Lawyers had drafted their leases using language seemingly approved by the Court of Appeals in *Tipton* and had pursued their claims for back rent, obtained judgments, and sought to enforce them with the understanding that the law allowed them to do so.

### Claim under the MCDCA – CL § 14-202(8)

On August 27, 2021, while this appeal was pending, the Court of Appeals filed its opinion in *Chavis v. Blibaum*, in which it interpreted CL § 14-202(8), on which the Tenants base their MCDCA claim.[15]

Like the MCDCA claim in this case, the CL § 14-202(8) claim in *Chavis* turned on the effect of a prior decision of the Court of Appeals. In 2018, the Court held in *Ben-Davies*

---

[15] *Nationstar Mortgage, LLC v. Kemp, supra,* filed the same day as *Chavis*, states many of the same propositions of law. Likewise, this Court's decision in *Newsom v. Brock & Scott, PLLC*, *supra*, filed a few months later, relied on the principles announced in *Chavis* and *Nationstar* to hold that a circuit court erred by granting a motion for judgment at a jury trial on a claim arising under the MCDCA (and one under the Maryland Mortgage Fraud Protection Act).

*v. Blibaum & Associates, P.A.*, 457 Md. 228 (2018), that the legal rate of interest on a judgment for back rent on a residential lease is six percent.  Not long before then, several plaintiffs in *Chavis* had filed a putative class action seeking a declaratory judgment and alleging claims for violation of CL § 14-202(8), related *per se* violations of the MCPA, and unjust enrichment.  The defendants in *Chavis* were lawyers who, before *Ben-Davies* was decided, obtained judgments for back rent that included language stating that post-judgment interest could be charged at the "legal rate."  The lawyers charged ten percent interest and pursued garnishments to collect on the judgments.  The *Chavis* plaintiffs alleged that the defendants had done so with knowledge that they had no right to charge more than six percent interest on the judgments.  The putative class of plaintiffs expanded in 2018, after *Ben-Davies* was decided.

The circuit court in *Chavis* dismissed the complaint for failure to state a claim for which relief could be granted.  After this Court affirmed, *see Chavis v Blibaum*, 246 Md. App. 517 (2020), the Court of Appeals granted a petition for writ of *certiorari*.  Before that Court, the *Chavis* plaintiffs argued that their CL § 14-202(8) claim should not have been dismissed because they sufficiently alleged that when the defendants, who were debt collectors, charged ten percent interest on judgments for back rent and then sought to collect that amount of interest, they acted with knowledge that they did not have the right to do so, as the legal rate of interest was six percent.  The defendants could not seek refuge by claiming ignorance of the law, the plaintiffs asserted, as they were duty bound to be knowledgeable of the governing law.

21

The *Chavis* defendants countered that the plaintiffs could not allege facts to prove that the defendants had acted with knowledge that they had no right to charge ten percent interest on the judgments because they had charged that percentage interest before *Ben-Davies* was decided, when the proper legal rate for post-judgment interest in actions for back rent was an undecided legal issue. That issue did not become decided, they asserted, until the Court of Appeals filed its opinion in *Ben-Davies*. The defendants maintained that because the law was undecided at the relevant time, they could not have acted with knowledge that they were pursuing a non-existent right.

The *Chavis* Court reversed on that issue. Its analysis proceeded from the general proposition that "the remedial nature of the MCDCA requires [the Court to] interpret § 14-202(8) broadly to reach any claim, attempt, or threat to enforce a right that a debt collector knows does not exist." __ Md. at __, slip op. at *23. As we have mentioned, the Court in *Chavis* held that the "with knowledge" element of that statute means the defendant acted with actual knowledge that the right it was pursuing did not exist *or* with reckless disregard of the existence of the right. *Id*. at __, slip op. at *27. *See also Nationstar Mortgage*, 476 Md. at 192 ("In short, to adequately allege the requisite knowledge for purposes of subsection (8), a plaintiff must allege that the defendant either actually knew that it did not possess a right it claimed as part of its debt collection efforts, or recklessly disregarded the falsity of that claim."); *Newsom*, __ Md. App. at __, slip op. at *27 (explaining that the *Chavis* Court "noted its agreement with cases that had held the knowledge element required either actual knowledge *or* reckless disregard as to the falsity of the existence of the right") (emphasis in original).

22

The *Chavis* Court explored how the settled or unsettled state of the pertinent area of law affects the knowledge element of CL § 14-202(8). Professional debt collectors and their lawyers must be held to be aware of laws relating to the validity of their collection efforts: "[W]here the law is settled at the time a collector takes a contrary position in claiming a right, the collector's recklessness in failing to discover the contrary authority is equivalent to 'aware[ness]' (*i.e.* actual knowledge) of the authority." __ Md. at __, slip op. at *30-31 (emphasis omitted) (quoting *Spencer*, 81 F. Supp. 2d at 595).

"[W]here the law is unsettled at the time the collector claims a right that later turns out not to exist[,]" its impact on the knowledge element of CL § 14-202(8) is not as straightforward. *Id.* at __, slip op. at *31. Recklessness becomes key. Depending on the circumstances, "a debt collector's claim of a nonexistent right in an unsettled area of the law may or may not be reckless." *Id.* Importantly, it is not a given, as the *Chavis* defendants had argued, that a debt collector cannot have acted with reckless disregard merely because the pertinent area of law was not settled. As the Court put it, a debt collector "does not escape liability under § 14-202(8) whenever, in the absence of controlling authority, the collector makes a mistake of law." *Id.* at __, slip op. at *33. Rather, liability will depend on whether the debt collector made the mistake of law recklessly. There is a "crucial" "distinction" between the collector's making a "non-reckless mistake as to a claimed right" and the collector's acting with "reckless disregard of the nonexistence of a claimed right[.]" *Id.* Whether a defendant acted recklessly is a question of fact. Therefore, to prevail at a stage of the case that tests the evidence, *i.e.*, either to withstand a motion for summary judgment or to succeed at trial, the plaintiff "must

23

produce facts from which the trier of fact reasonably may infer that the defendant acted recklessly in claiming the right." *Id*. at __, slip op. at *31.[16]

The *Chavis* Court emphasized that, having been dismissed for failure to state a claim for which relief could be granted, the MCDCA claim was not decided at an evidentiary stage of litigation. Accordingly, the proper question on appeal was whether the plaintiffs had adequately pleaded facts from which a trier of fact could find the defendant had acted with reckless disregard of the nonexistence of the right it had claimed. In other words, would the facts alleged, if supported by evidence, allow a trier of fact to find that the lawyers acted recklessly by disregarding the non-existence of their asserted right to charge ten percent interest on judgments? The Court concluded that the allegations in the complaint were sufficient under that standard, and the plaintiffs had stated viable claims for violations of the MCDCA. Because their claims under the MCPA rested on their claims under the MCDCA, they were viable as well.

We return to the case at bar. The *Chavis* opinion elucidates the standard for assessing the "with knowledge" element of CL § 14-202(8), and we must apply that

---

[16] The Court in *Nationstar* summarized these concepts as follows:

> As explained today in *Chavis*, we agree that the knowledge element is met when the law is settled, because the debt collector's recklessness in failing to discover that law is the equivalent of knowledge. However, we do not agree that the existence of a "potentially meritorious" argument as to the existence of the right necessarily negates knowledge. As also explained in *Chavis*, the question whether a debt collector acted recklessly is a question of fact, to be determined in light of the particular circumstances.

476 Md. at 191-92 (citations omitted).

24

standard on review of the circuit court's dismissal of the MCDCA claim. As mentioned, in arguing the motions below and in pursuing this appeal, the parties have focused on whether *Smith v. Wakefield* applies retroactively or prospectively. Retroactive application is the norm: "In the overwhelming majority of cases, a judicial decision sets forth and applies the rule of law that existed both before and after the date of the decision." *Am. Trucking Ass'ns, Inc. v. Goldstein*, 312 Md. 583, 591 (1988). Decisions that apply "'settled precedent to new and different factual situations'" "'always appl[y] retroactively.'" *Id.* (quoting *Potts v. State*, 300 Md. 567, 577 (1984)). Only when "a court overrules a prior interpretation of a constitutional or statutory provision," *id.*, or "change[s] the common law," *Julian v. Christopher*, 320 Md. 1, 10 (1990), does the question arise whether the decision only should apply prospectively.[17]

In dismissing the Third Amended Complaint, the circuit court concluded that *Smith* only applied prospectively, *i.e.*, that the principles it stated were not the law when the Landlords drafted and entered into these leases, when the Lawyers filed the actions for back rent on the Landlords' behalf, and when the judgments for back rent were obtained and enforced. Rather, it reasoned, *Tipton* was the law at those relevant times. Because the

---

[17] Ordinarily, prospective application is selective, that is, the "new pronouncement applies to the case in which it is made and not solely to cases arising after the pronouncement" but does not apply to "'all other[ cases] arising on facts predating the pronouncement.'" *Polakoff v. Turner*, 385 Md. 467, 486 (2005) (quoting *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 537 (1991) (plurality opinion)). In the very unusual case, a decision may be given purely prospective application, meaning that the newly announced rule of law not only does not apply to events occurring before the decision but also does not apply to the parties in the case before the court. *Id.* (citing *Beam*, 501 U.S. at 536). We shall use the word "prospective" to mean any prospective application.

25

third stated "holding" in *Tipton* condoned the use of language in residential leases declaring them to be contracts under seal to which a twelve-year statute of limitations applies, and the Landlords included exactly that language in their leases, the Landlords and the Lawyers could not have brought the actions for back rent more than three years after the breaches "with knowledge" that the right to do so did not exist.

On appeal, the parties argue opposite positions on the issue of retroactive versus prospective application of *Smith v. Wakefield*. It is now clear from the Court of Appeals analysis in *Chavis,* however, that the prospective/retroactive distinction drawn by the parties and the circuit court is not the correct analysis for deciding whether the Tenants have stated claims for which relief may be granted under CL § 14-202(8) of the MCDCA. We explain.

An appellate decision only will apply prospectively if it changes settled law, either in the judicial interpretation of a statute or the application of the common law. *Julian v. Christopher* is a good example in the common law realm. There, the Court of Appeals held that a landlord of a residential property must act reasonably in exercising discretion to withhold consent to sublease. In doing so, the Court overruled the holding in *Jacobs v. Klawans*, 225 Md. 147 (1961), that a landlord of such a property could withhold consent to sublease arbitrarily or capriciously. The *Julian* Court recognized that it was changing settled common law on the issue of consent to sublease and noted that landlords had been drafting their leases in reliance upon the holding in *Jacobs v. Klawans*. In that circumstance, the Court explained, it was fair and appropriate for the *Julian* decision to

26

apply prospectively only, as "[t]he courts must protect an individual's right to rely on existing law when contracting."  320 Md. at 10.

In cases like *Julian*, whether the decision applies prospectively or retroactively becomes an issue because the decision discards a settled principle or interpretation of the law and in its place adopts a new and different principle or interpretation.  *See Houghton v. Cnty. Comm'rs of Kent Cnty.*, 307 Md. 216, 220 (1986) ("the question of whether a particular judicial decision should be applied prospectively or retroactively, depends . . . on whether or not the decision overrules prior law and declares a new principle of law"); *see also Walker v. State*, 343 Md. 629, 639 (1996) ("[T]he mere correction of prior incorrect dicta does not represent 'a clear break with the past' generating the question of 'prospective only' application.").

The law pertinent to the case at bar was not settled by *Tipton*, however.  We know that because that was among the holdings of the Court in *Smith*.  The *Smith* Court specifically identified the areas of law that *Tipton* did and did not settle.  *Tipton* settled any dispute over the limitations period for actions for back rent on residential leases – it is three years – and further settled any dispute over whether affixing "(SEAL)" after the signature lines on a residential lease converts it into a specialty to which a twelve-year limitations period applies – it does not.  Notwithstanding the *Tipton* Court's use of the word "hold" in its last stated "holding," the phrase "unless" the parties expressly agree "in the body of the lease" to be bound by the "twelve-year limitation period of [CJP] section 5-102" was *not* a holding.  It was "dicta" that left open the question whether including such a phrase in a residential lease could make the lease a specialty.  And, as the *Smith* Court noted, *Tipton*

27

did not address the question whether a landlord violates the anti-waiver provision in RP § 8-208(d)(2) by including a clause in a residential lease lengthening the time for it to sue the tenant for back rent. The holdings of the Court in *Smith* make plain these two legal issues were unsettled before *Tipton* was decided and remained unsettled after it was decided. Thus, *Smith* did not change a settled statutory interpretation. Rather, it interpreted the pertinent statutes for the first time.

The *Smith* Court's pronouncement on what questions of law the *Tipton* Court did or did not settle is binding precedent. It establishes the state of the law in areas relevant to the case at bar after *Tipton* was decided but before *Smith* was decided.[18] With respect to the Tenants' MCDCA claim, under *Chavis,* to prove that the Landlords and Lawyers acted or attempted to claim, threaten, or enforce the right to sue for back rent with knowledge that the right did not exist because the debt was time-barred, the Tenants must produce evidence that the Landlords and Lawyers made a mistake of law and did so recklessly. As the Court in *Chavis* made clear, recklessness is a factual issue and whether there is sufficient evidence to prove it will be tested in any summary judgment proceeding or trial in this case.

The language used by the Court in *Tipton*, how the Court's words reasonably were understood by the Landlords and Lawyers, and whether the Landlords and Lawyers sought to apply their understanding of *Tipton* in drafting their leases and in pursuing claims for back rent all will be relevant to the factual question of recklessness. Likewise, how other

---

[18] Obviously, the *Tipton* opinion did not address the meaning and impact of CJP § 5-1202(a), which was enacted 15 years later. The *Smith* Court did not address that statute.

courts treated *Tipton* and the Landlords' and Lawyers' knowledge of those cases, will be pertinent. *See, e.g., Mercantile Place #1 Ltd. P'ship v. Renal Treatment Centers-Mid Atl., Inc.*, 2017 WL 5171120 at *3-4 (D. Md. Nov. 8, 2017) (relying upon *Tipton* for the proposition that a lessor must adduce evidence of "a clear intent to waive the three year limitations period in favor of the twelve year limitations period" and that affixing a seal alone is insufficient to accomplish that); *Hampt v. Chernow*, 2013 WL 4176959 at *4 n.7 (D. Md. Aug. 13, 2013) (noting, in reliance upon *Tipton*, that an action for unpaid rent is subject to a three-year limitations period "[u]nless the parties to the lease in the body of the lease agreed it is subject to the 12-year limitation period in [CJP] § 5–102").

On a motion to dismiss for failure to state a claim for which relief may be granted, however, sufficiency of the allegations, not of the evidence, is at issue. In the case at bar, for purposes of the MCDCA count, we must decide whether the facts alleged in the Third Amended Complaint, if supported by evidence as the litigation unfolds, could allow a trier of fact to find the knowledge element of that statutory claim. Could the facts alleged support a finding that the Landlords and Lawyers acted recklessly by pursuing actions for back rent beyond the three-year limitations period based on a limitations-extending lease clause the *Smith* Court later held was invalid and unenforceable, so as to violate the MCDCA?

The allegations in the Third Amended Complaint meet that challenge. The Tenants alleged that when the Landlords and Lawyers demanded payment and filed the lawsuits, in 2016 (except for Smith) and after, they knew that the statute of limitations for back rent is three years; that the three-year limitations periods on all the back rent actions had expired;

29

and that, unless the Statute of Limitations Clauses in the leases were valid and enforceable, they had no right to collect that debt and doing so was prohibited by CJP § 5-1202(a). Furthermore, the Tenants alleged, the Landlords and Lawyers knew there was no statutory authorization to extend the statute of limitations by the addition of clauses making the leases contracts under seal; and that the *Tipton* Court had not addressed whether a provision extending limitations in a residential lease would violate the anti-waiver provision of RP § 8-208(d)(2). From July 12, 2018 forward, they also knew that the Court of Appeals had granted *certiorari* in *Smith v. Wakefield* to address issues not decided in *Tipton*. The Tenants specifically alleged that the Landlords and Lawyers "knowingly intentionally or recklessly disregarded the facts and the law" and made demands for payment and filed the suits to recover back rent nevertheless, and that the Tenants suffered damages as a result. For a claim based on CL § 14-202(8), these allegations are sufficient to withstand a motion to dismiss for failure to state a claim for which relief can be granted.

### *Claims under the MCPA – CL §§ 13-301 and 13-303*

CL § 13-303 prohibits a person from "engag[ing] in any unfair, abusive, or deceptive trade practice" in, among other things, "(5)[t]he collection of consumer debts[.]" CL § 13-301 defines "unfair, abusive, or deceptive trade practices." A violation of the MCDCA is an unfair, abusive, or deceptive trade practice. CL § 13-301(14)(iii). Accordingly, for the same reasons the circuit court erred in dismissing the MCDCA claim, it erred in dismissing the Tenants' *per se* MCPA violation claim.

In addition to their *per se* violation claim, the Tenants alleged that the Landlords violated the MCPA in collecting consumer debts by making false or misleading oral or

30

written statements or representations having the "capacity, tendency or effect of deceiving or misleading consumers," *see* CL § 13-301(1), and by failing to state a material fact, with the intent to deceive, *see* CL § 13-301(3). Specifically, they alleged that all the representations by the Landlords to the Tenants that collection of their alleged debts, *i.e.*, back rent, were subject to a twelve-year statute of limitations were false; all the statements made by the Landlords in attempting to collect the debts, including by pursuing litigation in the District Court, were misleading, as they were made with the implicit representation that they had the right to do so; and beyond that, the Landlords omitted the material fact that they did not have the right to pursue collection of these debts as they were time-barred. The Tenants alleged that they had suffered damages as a result.

The circuit court dismissed the independent claim under the MCPA on two grounds. First, consistent with its MCDCA ruling, it ruled that when the alleged misrepresentations were made, they were not false, and therefore the Landlords could not have known they were false. Specifically, the court reasoned that because *Smith* applied prospectively only, the Landlords could not have known that the representations they made were false. We note that, "[t]o violate the MCPA, a defendant need not intend to deceive the consumer."[19] *Allen v. Bank of America, N.A.*, 933 F. Supp. 2d 716, 730 (D. Md. 2013) (citing *Consumer Prot. Div. v. Morgan*, 387 Md. 125, 211 (2005) & *Golt v. Phillips*, 308 Md. 1, 10-11

---

[19] Under CL § 13-301(a), in which the type of prohibition against unfair and deceptive trade practices is equivalent to common law fraud, scienter must be proven. Unfair and deceptive trade practices prohibited by CL §§ 13-301(1) and 13-301(3) are not the equivalent of common law fraud and scienter is not an element. *See McCormick v. Medtronic*, 219 Md. App, 485, 529-30 (2014).

(1986)).  In any event, if knowledge of falsity were required, the reasoning that there could be no proof of such knowledge because *Smith* did not apply retroactively does not withstand scrutiny as we have explained in our discussion of the MCDCA claim.

Second, the court dismissed the independent MCPA claim because the allegedly false and misleading representations were made to the court, not to a consumer.  In so ruling, the court relied upon *Sayyed v. Wolpoff & Abramson*, *LLP*, 733 F. Supp. 2d 635, 648 (D. Md. 2010).  The Tenants assert that this reliance was misplaced, and that *Andrews & Lawrence Pro. Servs., LLC v. Mills*, 467 Md. 126 (2020), establishes that misrepresentations made in court filings may be a basis for liability under the MCPA.

In *Sayyed*, Discover Bank, represented by a lawyer with Wolpoff & Abramson ("W&A"), sued Sayyed in District Court to recover $13,983.50 in credit card debt.  Sayyed prayed a jury trial and the case was transferred to the circuit court.  The lawyer representing Discover Bank filed interrogatories followed by a motion for summary judgment.  When Sayyed filed a counterclaim for several torts, the W&A lawyer withdrew his appearance and another lawyer entered his appearance for Discover Bank.  Eventually, the case between Sayyed and Discover Bank was settled.  The release retained Sayyed's right to bring claims against W&A.

Not long thereafter, in the federal district court for Maryland, Sayyed filed suit against W&A alleging, among other things, that it had violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, in its defense of Discover Bank.  Of pertinence to the case at bar, Sayyed asserted that in the motion for summary judgment W&A filed on behalf of Discover Bank, it asked the court to award it attorneys' fees, but

32

his agreement with Discover Bank did not provide that he would be responsible for fees. For that reason, he alleged, the request for attorneys' fees was a false representation by W&A that it lawfully could recover attorneys' fees from Sayyed in the litigation, and therefore was a violation of the FDCPA. W&A responded that the agreement in fact provided for the recovery of attorneys' fees but, more centrally, the prayer for attorneys' fees was a request to the court, not a demand to the consumer (Sayyed), and therefore was not actionable under the FDCPA.

The federal district court agreed with W&A. It ruled that the fee request in Discover Bank's motion for summary judgment in the District Court collection case was "a request directed to the court, not a communication directed to the debtor, and certainly not a misrepresentation to Sayyed's attorney, who could and in fact did easily take issue with it." 733 F. Supp. 2d at 649.

The situation facing the federal district court in *Sayyed* is not comparable to that facing the circuit court in this case, and not only because the claim was brought under the FDCPA, which differs substantially from the MCPA. In *Sayyed*, the prayer for attorneys' fees was an item of relief requested by Discover Bank, the debt collector, at the conclusion of its motion for summary judgment made at a stage in the litigation when Sayyed, the debtor, was represented by counsel. The motion was mailed to counsel for Sayyed, not to Sayyed himself. The *Sayyed* court agreed that a prayer for attorneys' fees is not a demand to the debtor but is a request for consideration by the court that "'ultimately rests upon the discretion of the court and a determination of applicability at a later stage of the litigation.'"

33

*Id.* at 648 (quoting *Argentieri v. Fisher Landscapes, Inc.*, 15 F. Supp. 2d 55, 61-62 (D. Mass. 1998)).

Here, the Tenants' allegations under the MCPA are not restricted to statements made in the complaints filed against them in the District Court. The Statute of Limitations Clauses in the leases themselves could satisfy the allegations of false or misleading representations that deceived or misled the Tenants that are necessary to state such a claim under the MCPA. And the complaints filed in District Court were served on the Tenants, not on counsel, and thus were demands made directly to them, as debtors, for payment of debts that, as the Tenants alleged, they were not obligated to pay. The complaints were not requests made by the Landlords to the court to exercise discretion to grant fees; they were demands for payment by the Landlords to the Tenants. The analysis in *Sayyed* is not applicable here.

As noted, the Tenants argue that *Anderson & Lawrence Professional Services, LLC v. Mills*, *supra*, supports their position that a claim under the MCPA can be based on assertions made in a complaint filed in court. The primary issue in that case was the scope of the professional services exemption of the MCPA. *See* CL § 13-401(1). Attorneys Anderson & Lawrence ("A&L") engaged in debt collection practices on behalf of a homeowners association ("HOA") against certain homeowners who were delinquent in their assessments. Its debt collection practices spanned years and included filing lawsuits against the delinquent homeowners. Ultimately, the homeowners sued A&L and the HOA for engaging in debt collection practices that, among other things, violated the MCPA. The circuit court dismissed the MCPA claim against A&L on the ground that its actions

34

constituted the rendering of professional services, which are exempt under the MCPA. The court dismissed the MCPA claim against the HOA on the ground that it could not be vicariously liable for its attorneys' acts when those acts were exempt.

The Court of Appeals reversed. It held that when a lawyer engages in debt collection activity that could be undertaken by a debt collector who is not a lawyer, the lawyer is not exempt from liability under the MCPA. On the issue of vicarious liability, it held that the exemption does not "flow to the client." 467 Md. at 134. Thus, when a lawyer engages in professional services to which the exemption applies, such as filing a lawsuit to recover delinquent fees or filing a statement of lien under the Maryland Contract Lien Act, the lawyer's client does not benefit from the exemption. In applying its decision to A&L, the Court explained:

> Of course, some of the activities undertaken by [A&L] would be considered professional services of a lawyer, which would be exempt from the application of the CPA. For example, [A&L's] actions in filing lawsuits or filing liens under the MCLA would constitute professional services that only a licensed attorney could undertake. These actions were undertaken by [A&L] as the agent of [the HOA]. *Although [A&L] may be exempt from the CPA for any deceptive or unfair trade practices arising from such professional services, we hold in this case that its client is not*.

467 Md. at 155, n.7 (emphasis added).

The Tenants maintain that the Court's explanation of legal activities for which a lawyer will be exempt from liability under the MCPA but the lawyer's client will not shows that filing a lawsuit is not an activity that is outside the scope of the MCPA as being a request to a court, not a demand to a consumer. This was not the issue before the Court, although the Court's holding is not inconsistent with the Tenants' position on the issue.

35

We feel confident, however, that the allegations of misrepresentations in the leases and the lawsuits, being distinguishable from the request for attorneys' fees made in *Sayyed*, are sufficient to support a claim for an independent violation of the MPCA.[20]

### Claim under RP § 8-208

As we have recounted, although the Court in *Tipton* did not address whether a provision in a residential lease increasing the statute of limitations to twelve years runs contrary to the anti-waiver provision of RP § 8-208(d)(2), the Court in *Smith* did. It held that the Statute of Limitations Clause in the lease in that case, which is the same clause used in all the leases in this case, in fact violates that anti-waiver provision. Employing the same retrospective versus prospective application analysis it used for the MCDCA claim, the circuit court dismissed Count 6, the Tenants' claim against the Landlords under RP § 8-208, on the theory that *Smith* marked a change in the law and therefore only applies prospectively.

Assuming that is the correct framework for analysis, we disagree. As explained above, prospective application of an appellate court's decision only is appropriate when the court is announcing a clear change in the law and is rejecting a previously settled legal principle. Here, there was no previously settled legal principle to reject. Both before and

---

[20] In one sentence in their brief, the appellees state that "although this issue received little attention below, Appellants' MCPA claims properly were dismissed because Appellants failed to allege any actual damages resulting from the purported statutory violations." Count 5 includes an allegation that damages were incurred as a result of the Landlords' violations of the MCPA; whether the damages are such as to satisfy the proof required under the MCPA is a question of fact not properly addressed on a motion to dismiss.

36

after *Tipton*, the question whether a clause purporting to extend the statute of limitations in a residential lease by making it a contract under seal would violate the anti-waiver provision of RP § 8-208(d)(2) was unaddressed and unsettled.  Plainly, the *Smith* holding that the Statute of Limitations Clause identical to that used in all the leases in these cases is contrary to the anti-waiver provision in RP § 8-208(d)(2) applies retroactively to the events in the case at bar.  Because the Tenants alleged facts that, if backed by evidence, could support a jury finding that the Landlords violated the anti-waiver provision, Count 6 should not have been dismissed.

## II.

### DECLARATORY AND INJUNCTIVE RELIEF

In Counts 1 and 2, the Tenants sought declaratory and injunctive relief for alleged violations of CJP § 5-1202(a), which, they claimed, stripped the District Court of jurisdiction over the back-rent actions brought there, rendering the judgments entered by the District Court void.  We shall address those counts together.  Count 3 is based solely on the Statute of Limitations Clauses in the leases, and we shall address it separately.

### *Counts 1 and 2*

The plaintiffs in Count 1, all the Tenants except Smith, alleged that they entered into leases with the Landlords, were sued for back rent after the statute of limitations had expired and after the effective date of CJP § 5-1202(a), and the suits against them were not

37

dismissed with prejudice.[21]  They sought a declaration that the suits were filed in violation

of CJP § 5-1202(a) and for that reason the District Court lacked jurisdiction over the claims.

They requested damages in the form of disgorgement of "all sums and profits realized from

the Named Plaintiffs and Tenant Subclass Members"; injunctive relief "to prevent further

violations of law or providing benefits to them from illegal activities," "reasonable

attorney's fees, litigation expenses, and costs"; and further "appropriate declaratory relief."

In Count 2, Tenants Simmons and Kelly made the same allegations but added that

judgments had been entered against them in the District Court cases.  They sought a

declaration that those judgments are void and unenforceable.  In addition to the injunctive

relief sought in Count 1, they sought an injunction prohibiting the Landlords and Lawyers

from acting to enforce those judgments.

CJP § 5-1202(a) is part of Title 5, Subtitle 12 of the Courts and Judicial Proceedings

Article, entitled "Consumer Debt Collection Actions."  Subtitle 12 consists of four sections.

Section 5-1201 recites "Definitions."  Subsection 5-1202(a), which we are concerned with,

states that "[a] creditor or collector may not initiate a consumer debt collection action after

the expiration of the statute of limitations applicable to the consumer debt collection

action."  Subsection (b) generally provides that certain acts do not revive or extend a

limitations period for a debt collection action after the statute of limitations has expired.

---

[21] In the Third Amended Complaint, there is an inconsistency between this allegation and the facts alleged with respect to plaintiff Lorraine Haut.  It states in the complaint that the District Court action against Haut was voluntarily dismissed with prejudice.  We discuss below particular arguments the appellees make regarding Haut and two other plaintiffs.

Section 5-1203, "Consumer debt collection action," specifies certain documents and other evidence that a debt collector must possess and use when bringing and pursuing such an action. Finally, section 5-1204, "Construction of subtitle," states that the "subtitle may not be construed to alter any licensing requirement under federal or Maryland law applicable to debt buyers or collectors."

The definition of "Consumer debt collection action" specifies that it "does not include an action brought under § 8-401 of the Real Property Article by a landlord or an attorney, a property manager, or an agent on behalf of a landlord." CJP § 5-1201(f)(2). RP § 8-401, broadly titled "Nonpayment of rent," creates an action for repossession of property for non-payment of rent, otherwise known as a "summary ejectment" action. *See Cane v. EZ Rentals*, 450 Md. 597, 602 (2016). The suits filed against the Tenants in the District Court were not summary ejection actions.

Nothing in Subtitle 12 addresses any consequence to a creditor or collector for initiating a consumer debt collection action after the statute of limitations for that action has expired, as CJP § 5-1202(a) states it may not do. With respect to that subsection, the Fiscal and Policy Note for Senate Bill 771 (2016), which is the legislation that resulted in Subtitle 12, simply repeats its wording and points out the exemption in subsection (b) for summary ejectment actions. There is no case law in Maryland interpreting the statute.

The reasoning of the Court of Appeals in *LVNV Funding LLC v. Finch*, 463 Md. 586 (2019), leads us to conclude that CJP § 5-1202(a) does not divest any Maryland court of its otherwise-existing fundamental jurisdiction over time-barred claims for back rent. In *Finch,* in the District Court, LVNV Funding LLC ("LVNV") filed a multitude of consumer

39

debt collection actions and obtained judgments against debtors. Two debtors brought a class action against LVNV alleging that it was a collection agency and had been unlicensed when it obtained the judgments. The debtors sought disgorgement of all sums LVNV had received on the judgments and an injunction prohibiting it from taking action to enforce the judgments. LVNV responded that it was not a collection agency; that the suit was an improper collateral attack on the judgments it had obtained; that only a void judgment may be collaterally attacked; and that its judgments were not void.

The Court of Appeals concluded that, at the relevant times, LVNV was a collection agency within the meaning of Maryland Code (1992, 2015 Repl. Vol., 2021 Supp.), § 7-101(d) of the Business Regulations Article ("BR"), and therefore was required to be licensed to engage in debt collection activity in Maryland. *See* BR § 7-301(a). It was not licensed when it brought the suits and obtained the judgments at issue, all of which were enrolled, *i.e.,* had been entered for 30 days or more. The Court explained that an enrolled judgment only may be collaterally attacked "when the court that rendered the judgment had no *jurisdiction* to do so[,]" and therefore the judgment is void *ab initio*. 463 Md. at 608 (emphasis in original). Jurisdiction in that sense means fundamental jurisdiction, or the "'power to act with regard to a subject matter.'" *Id*. at 609 (quoting *Cnty. Comm'rs v. Carroll Craft*, 384 Md. 23, 44 (2004)). "'[T]he main inquiry in determining "fundamental jurisdiction" is whether or not the court in question had general authority over the class of cases to which the case in question belongs.'" *Id*. (quoting *Carroll Craft*, 384 Md. at 45). The Court held that the judgments LVNV obtained when it was an unlicensed collection agency were not void and could not be collaterally attacked.

40

In the case at bar, the District Court suits filed by the Landlords and Lawyers against the Tenants were debt collection actions. Specifically, they were breach of contract actions to recover unpaid rent, *i.e.*, back rent, and other costs allegedly associated with the Tenants' breaches of their leases. There is no assertion that the amounts sought by the Landlords were above the prevailing jurisdictional limit of civil actions in the District Court. *See* CJP § 4-401(1) (District Court has exclusive original jurisdiction over an action on a debt not exceeding $30,000, exclusive of interest, costs, and fees). Nor is it alleged that these cases did not fall within the classes of cases over which the District Court has authority. Clearly, they did. The Tenants seem to be maintaining that ordinarily the District Court would have fundamental jurisdiction over actions for back rent but its jurisdiction ceases to exist when such an action is filed after the applicable statute of limitations had run.

No Maryland case addressing time limits for filing civil actions supports the Tenants' position. The statute of limitations for an action is a defense that must be pleaded in the answer to the complaint and, as an affirmative defense, must be proven by the defendant. *See* Md. Rule 2-323(g)(15) (enumerating affirmative defenses that must be pleaded in an answer); *McClure v. Lovelace*, 214 Md. App. 716, 742-43 (2013) (a defendant bears the burden of proving a statute of limitations defense). It does not affect the defendant's liability but restricts the plaintiff's right to obtain a remedy for the wrong committed. *Anderson v. United States*, 427 Md. 99, 118 (2012); *Waddell v. Kirkpatrick*, 331 Md. 52, 59 (1993). The defense of limitations will be waived if not asserted, or if not timely asserted. *Waddell*, 331 Md. at 59. A statute of limitations runs from the time the wrong is "complete and actionable," which can be delayed by the judicially created

41

discovery rule, *see Poffenberger v. Risser*, 290 Md. 631, 636 (1981), and can be tolled by fraud under CJP § 5-203. *Mathews v. Cassidy Turley Md., Inc.,* 435 Md. 584, 612 (2013).

There are other statutory time limits for filing suit that are not statutes of limitation but are statutes of repose. Unlike a statute of limitations, a statute of repose "runs from a date that is unrelated to the date of injury" and "can sometimes foreclose a remedy before an injury has even occurred and before any action could have been brought." *Mathews,* 435 Md. at 611-12. And sometimes, a time limit for filing an action is embodied in a statute creating the cause of action. In that situation, compliance is a condition precedent to bringing the action. For example, the Wrongful Death Act includes at CJP § 3-904(g)(1) a proviso that, with certain exceptions, "an action under this subtitle shall be filed within three years after the death of the injured person." The Court of Appeals has interpreted this time limit for commencing an action for wrongful death to be a condition precedent that restricts not only the right to a remedy but also the right to a determination of liability. *Waddell*, 331 Md. at 57-59; *see also Spangler v. McQuitty*, 449 Md. 33, 67 (2016) (the limitations period in the Wrongful Death Act is a condition precedent to bringing an action for wrongful death).

Whether a time limit is a statute of limitations, a statute of repose, or a condition precedent to bringing an action may affect the process for raising it to the court, whether it can be waived, whether the court may take notice of it when not raised, and so forth. *See Mathews,* 435 Md. at 611-12; *Waddell*, 331 Md. at 57-59; *Anderson*, 427 Md. at 118. In no circumstance, including when the right to pursue a claim in court is conditioned upon an action being filed in time, has the failure to adhere to the time period affected the

42

fundamental jurisdiction of the court over the action. If a judgment has been entered and is challenged on appeal on the ground that a time limit was waived or had expired, the judgment will be reversed or vacated if the court is shown to have erred in its ruling on the time limit. In such a case, the court will have committed error in exercising the jurisdiction it has; it will not have acted without jurisdiction.

Accordingly, in the case at bar, the District Court had jurisdiction over the back-rent cases, even if they were filed in violation of CJP § 5-1202(a). The judgments entered against some of the Tenants in those cases are not void and cannot be collaterally attacked. The question remains, however, whether the Tenants still may obtain an injunction directing the Landlords and Lawyers to disgorge monies received as a consequence of the suits and prohibiting them from enforcing the judgments they obtained that have not been executed upon. To answer that, we again turn to *LVNV v. Finch*.

After determining that the judgments obtained by LVNV against the debtors were not void and could not be collaterally attacked, the Court went on to hold that the plaintiff debtors were not without any remedy; indeed, they had paths to recover damages and to obtain declaratory and injunctive relief. The plaintiff debtors could pursue LVNV under CL § 14-202(8) of the MCDCA, for bringing the debt collection actions with knowledge that they did not have the right to do so. If they prevailed, then under CL § 14-203 they could collect "any damages." With respect to declaratory and injunctive relief, the Court looked to BR § 7-401, which makes it a misdemeanor for a person to knowingly and

willfully do business in Maryland as a collection agency without a license.[22]  The Court

held that "BR § 7-401, read in conjunction with § 7-101(c), *would permit declaratory and*

*injunctive relief precluding LVNV from taking any action to enforce those judgments* and

for *any* damages incurred by the plaintiffs as the result of LVNV's collection efforts."  463

Md. at 612 (second emphasis in original).  Two years later, the Court in *Cain v. Midland*

*Funding, LLC*, 475 Md. 4 (2021), summarized as follows the pertinent holding in *Finch*:

> Although an enrolled judgment obtained by an unlicensed debt buyer is not void, a judgment debtor may still have a cause of action under the Maryland consumer protection statutes governing debt collection . . . for declaratory and injunctive relief precluding the debt buyer who obtained the judgment while unlicensed, from enforcing those judgments and for any damages incurred by the plaintiff as a result of the collection efforts.

*Id*. at 23.

In the case at bar, we must determine whether, upon proof of any of their claims

under the MCDCA or MCPA, the Tenants may obtain relief of the same type recognized

as recoverable by the Court in *Finch:* orders directing the Landlords and Lawyers to

disgorge monies they received as a consequence of initiating the debt collection actions in

violation of CJP § 5-1202(a) and prohibiting them from enforcing the judgments they

received.

The Maryland case law addressing the circumstances in which a party may obtain

injunctive relief prohibiting the opposing party, a judgment creditor in another case, from

enforcing the otherwise enforceable enrolled judgment in that other case, is sparse.  The

---

[22] These statutes are part of the Maryland Collection Agency Licensing Act ("MCALA"), codified at BR §§ 7-101 through 7-502.  The definition of collection agency currently appears at BR § 7-101(d).

cases all predate 1984, when the circuit courts of law and equity were combined.  *See Higgins v. Barnes*, 310 Md. 532, 540 (1987) (discussing the "comprehensive rules change" effective July 1, 1984 that accomplished the merger of law and equity).  They establish that it is, in fact, within a circuit court's equity power to restrain against an ongoing proceeding in a court of law or activity to enforce a judgment entered by a court of law.  *Cf. Michael v. Rigler*, 142 Md. 125, 137 (1923) ("the right of courts of equity to restrain proceedings in courts of law in a proper case has been recognized since the reign of Edward IV (1 *High on Injunctions*, sec. 112), and has, in the courts of this state, at least, been uniformly recognized throughout its history.").

With respect to judgments, for example, in *Norris v. Campbell*, 27 Md. 688 (1867), the Court of Common Pleas for Baltimore City, a law court, entered a judgment against Campbell and three years later, Norris commenced attachment proceedings.  Campbell filed suit in the Circuit Court for Baltimore City, an equity court, for an injunction prohibiting Norris from pursuing the attachment on the judgment.  Campbell argued that he had been out of state when the judgment was entered against him.  The court granted the injunction and Norris appealed.  The Court of Appeals reversed on the ground that Campbell was not prevented from defending the suit by any fraud or accident committed by Norris.  It explained:

> Courts of Chancery do not lightly interfere with judgments at law; they only interfere for prevention of fraud; never merely for the correction of informalities or irregularities in legal or judicial proceedings.

*Id.* at 692.

Even before then, in *Gott v. Carr*, 6 G. & J. 309, 312 (1834), the Court of Appeals

stated:

> The well settled general rule being, that a court of equity will not relieve
> against a recovery in a trial at law, unless the justice of the verdict can be
> impeached by facts, or on grounds, of which the party seeking the aid of
> Chancery, could not have availed himself at law, or was prevented from
> doing it by fraud or accident, or the act of the opposite party, unmixed with
> any negligence or fault on his own part.

Cases using similar language include: *Easter v. Dundalk Holding Co.*, 199 Md. 303, 306

(1952) (affirming denial of injunction by equity court to restrain against enforcement of

judgment for ejection entered by law court) and *Redding v. Redding*, 180 Md. 545 (1942)

(affirming grant of injunction by equity court prohibiting defendant from enforcing

confessed judgment she entered in law court, transferred to another court, and sought to

execute upon all the time knowing the underlying debt had been paid).[23]

In *Kardy v. Shook*, 237 Md. 524 (1965), the Court explained with respect to a suit

in equity seeking to restrain an ongoing judicial proceeding, which also would apply to a

request for an injunction against enforcing a judgment:

> When the jurisdiction of an equity court which pertains to the restraint of
> judicial proceedings is invoked, the injunction is directed not to the presiding
> judge of the court, but to the parties litigant, and in no manner denies the
> jurisdiction of the legal tribunal. An injunction of this nature controls the
> course of conduct of the person, or persons, to whom it is addressed, and is
> utilized to prevent him, or them, from using the process of courts of law
> where it would be contrary to good conscience to allow the party, or parties,

---

[23] *See also* MD-ENC JUDGMENTS 59 stating: "On a showing of proper circumstances, and when required by the ends of justice, appropriate relief against a judgment may be had in equity, the power of equity in this connection being inherent, and existing irrespective of any statute authorizing such relief. Nevertheless, a court's inherent equity power to entertain independent equitable actions has been preserved by statutory and regulatory provisions governing relief from judgments."

46

to proceed. This class of injunctive relief is based upon the ground that some unfair advantage is being obtained, or has been obtained, in the law court, which, under the circumstances, equity alone can prevent from becoming effective.

*Id*. at 532-33.

In *Finch*, LVNV obtained the judgments against the debtors by knowingly and willfully doing business as a debt collector when unlicensed, in violation of a statute criminalizing such activity. To be sure, the statutory limitation against filing debt collection actions for time-barred debt in CJP § 5-1202(a) is not a criminal violation. Nevertheless, the prohibition was enacted as part of legislation affording a number of procedural protections to debtors in litigation, and one of the General Assembly's clear intentions in doing so was to safeguard debtors from being pursued in court for time-barred debt. *See* 2016 Md. Laws Ch. 579 (S.B. 771) ("FOR the purpose of prohibiting a creditor or a debt collector from initiating or filing a certain consumer debt collection action under certain circumstances[.]"). While CJP § 5-1202(a) did not make it illegal for a collector to file suit in an attempt to recover time-barred debt, it made it wrongful for it to do so. Just as it would be unjust to allow a debt collector to enjoy the proceeds of a judgment obtained in violation of the licensing law, it would be unjust to allow a debt collector to benefit from a judgment it obtained on time-barred debt. Indeed, unlike the debts in *Finch*, the debts here, if shown to be time-barred, no longer were recoverable by any collector, licensed or unlicensed.

If the Tenants succeed in proving, pursuant to CL § 14-202(b), that the Landlords and Lawyers brought the District Court actions for back rent with actual knowledge that

47

they were time-barred, the court may direct that monies obtained as a consequence shall be disgorged and that all judgments so obtained may not be enforced. In its ruling, the circuit court took the position that, as a court in Baltimore City, it would not have the power to direct that a judgment in another county is not to be enforced. This is incorrect, as it rests on the premise that the court lacks jurisdiction to allow a collateral attack on a judgment of another court. An injunction directing a party before the court not to take action to enforce a judgment is not a collateral attack on the judgment. It is an injunction prohibiting a party over whom the court has personal jurisdiction in a case over which it has subject matter jurisdiction from taking certain actions. *See Kardy*, 237 Md. at 532-33 ("An injunction of this nature controls the course of conduct of the person, or persons, to whom it is addressed, and is utilized to prevent him, or them, from using the process of courts of law where it would be contrary to good conscience to allow the party, or parties, to proceed."). The court has the power to do so.

### *Count 3*

In Count 3, the Tenants asked the circuit court to declare that the Statute of Limitations Clauses in the leases purporting to extend the limitations period to twelve years "are contrary to Maryland law and are unenforceable in any court." The Landlords and Lawyers moved to dismiss this count on the ground that the Court of Appeals addressed this issue in *Smith* and it would serve no useful purpose for the circuit court to render a declaratory judgment that merely reiterates a holding of the Court of Appeals. The circuit court agreed.

48

Pursuant to CJP § 3-409(a), a court may issue a declaratory judgment if doing so "will serve to terminate the uncertainty or controversy giving rise to the proceeding[.]" Ordinarily, in a declaratory judgment action the court "must declare the rights of the parties in light of the issues raised." *Jennings v. Gov't Emp. Ins. Co.*, 302 Md. 352, 355 (1985). As a general rule, it rarely is appropriate for a court to grant a motion to dismiss a declaratory judgment action without declaring the rights of the parties. *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 556 (1999). However, when "the controversy is not appropriate for resolution by declaratory judgment," the court may dismiss the claim. *Converge Servs. Grp. v. Curran*, 383 Md. 462, 477 (2004). For example, absent "unusual and compelling circumstances," "a trial court should not entertain a declaratory judgment action when there is already pending another action between the same parties concerning substantially the same issues[.]" *Hanover Inv., Inc. v. Volkman*, 455 Md. 1, 4 (2017). Moreover, a motion to dismiss may lie when a case is moot, *Broadwater v. State*, 303 Md. 461, 468 (1985), or when the same issues are awaiting decision in another common-law proceeding. *Haynie v. Gold Bond Bldg. Prods.*, 306 Md. 644, 650-54 (1986). In these circumstances, the declaratory judgment action would serve no useful purpose.

The Landlords and Lawyers first argue generally that it will serve no purpose for the circuit court to state by declaratory judgment a principle that the Court of Appeals already has spoken on. We do not find merit in this argument. A principle of law need not be new and unaddressed to be a proper subject of a court's declaration by declaratory judgment.

49

The second argument the Landlords and Lawyers advance pertains to certain of the plaintiffs. They maintain that with respect to Marie Brown and Lorraine Haut, the circuit court properly dismissed this claim, and their claim for declaratory and injunctive relief in Count 1, because their District Court cases were dismissed to their benefit. With respect to Cory Scoville, they maintain that the circuit court likewise properly dismissed this claim and the claim in Count I because the District Court back rent action against him was stayed pre-judgment, pending our decision in this appeal. Accordingly, the same issues are pending in another forum and should not be addressed by way of a declaratory judgment in the instant case.

The status of the District Court case for back rent against a Tenant as resolved in the Tenant's favor or unresolved and pending does not necessarily mean that there is no useful purpose to the Tenant's claim for declaratory and injunctive relief in this case. Brown and Haut may be entitled to damages in the case at bar in the form of costs and expenses they incurred in defending the suits against them; and even assuming the pending case against Scoville is decided in his favor under *Smith*, he may also be entitled to pursue relief of that sort. At this early stage of litigation, we do not see these declaratory and injunctive claims as falling in the rare category of cases warranting dismissal.

## III.

### ATTORNEYS' FEES

Finally, the Tenants' claim for attorneys' fees in Count 7 was attendant to their substantive claims in the preceding counts. Because we are vacating the judgments dismissing those claims, we shall vacate the judgment dismissing this claim as well.[24]

> **JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEES.**

---

[24] The Lawyers and Landlords maintain that if this Court should reverse and remand, as we are in fact doing, we should do so with instructions that the circuit court must "assess each Appellant's standing to sue each Appellee at the pleading stage" because this was an alternative basis upon which they sought dismissal of the Third Amended Complaint and the circuit court deferred decision on that issue, ruling that it was appropriate for determination at the class certification stage. The Lawyers and Landlords are free to renew this argument before the circuit court on remand, but we decline to direct the circuit court to consider it.